UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTINE ROSADO,  :  | |
| Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | 3:04-CV-369 (JCH) |
| : | |
| JOHN WILLIAMS., : | |
| Defendant. : | APRIL 26, 2006 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31]**

The plaintiff, Christine Rosado, brings this action against defendant John Williams, a police officer in the Meriden, Connecticut police department, in his individual capacity. Rosado has sued Williams pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth Amendment of the United States Constitution, alleging that Williams used an unreasonably excessive amount of force in the course of detaining her with handcuffs during arrest. In a previous motion, Williams moved for partial summary judgment on Rosado's claim regarding her initial detention in handcuffs. Williams now moves for summary judgment on Rosado's remaining claim regarding her continued detention in handcuffs, arguing, <u>inter alia</u>, that the manner of Rosado's detention was reasonable in light of the circumstances, and that Rosado's suit is barred by qualified immunity. For the reasons stated below, the defendant's motion is GRANTED.

**I. FACTUAL BACKGROUND**[1]

---

[1]For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving party, here the plaintiff, where there is evidence to support her allegations.
  In her complaint, Rosado asserts an excessive force claim against Williams, alleging, <u>inter alia</u>, that his decision to handcuff her behind her back in the course of her

On July 19th, 2001, at approximately 10:45 pm, Rosado, as well as two companions, were pulled over in Rosado's vehicle by Meriden police officers, in response to a report that Rosado and her companions had threatened another woman with knives. After being pulled over, Rosado and her companions were patted down, and Rosado's car was searched, but no knives were found in her possession. According to Rosado, she was thoroughly searched at the scene; she was wearing only jogging pants and a t-shirt, and the officers had her move her bra and t-shirt away from her body to show that she had nothing concealed. Plaintiff's Statement of Material Fact, ¶ 5 [Doc. No. 34].

Rosado was placed under arrested and handcuffed behind her back by Williams. According to Rosado, she informed Williams that she had recently dislocated her shoulder and was receiving medical treatment, and she asked that she be handcuffed in front of her. For safety reasons, Williams refused her request.

According to Rosado, she remained handcuffed with her hands behind her back for about an hour after being placed in a holding cell at the police station. Id. at ¶ 11, Ex. 3A, Rosado Depo., p. 53. During that time, she complained about being in pain and requested that her handcuffs be removed. Id. Rosado was searched at the police

---

arrest was an unreasonable use of force in light of her preexisting shoulder injury. In its previous ruling, the court described the factual background pertaining to Rosado's claim that the initial decision to handcuff her behind her back was unreasonable. See Ruling, September 8, 2005 [Doc. No. 28]. Williams has now moved for summary judgment on Rosado's remaining claim that the manner of her continued detention in handcuffs while detained in the Meriden police station was unreasonably excessive. The court will describe the factual background pertaining specifically to Rosado's remaining claim.

station by a female officer, and her handcuffs were removed following the search.  The plaintiff received treatment at an emergency room, and later from a chiropractor, for the pain she experienced in her back.

Rosado contends that her continued detention in handcuffs, with her hands behind her back, was unreasonable in light of her complaints of pain.  In response, Williams contends that Rosado's continued detention in handcuffs at the police station was necessary until a female officer was available to search her.  Rosado argues, however, that the search at the police station was not more or less intrusive than that to which she was subjected on the street at the time of her arrest.

## II.     LEGAL STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000). The moving party bears the burden of showing that no genuine factual dispute exists. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law."  Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)(quotation marks omitted).  When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.  Sologub v. City of New York,

202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a Summary Judgment Motion." Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)). Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the Summary Judgment Motion are not credible). Moreover, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Jeffreys, 426 F.3d at 554.

Rosado states a claim for excessive force under the Fourth Amendment pursuant to 42 U.S.C. § 1983. In response, Williams claims that he should be afforded qualified immunity from suit. "As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their actions did not violate those

rights." Kerman v. City of New York, 374 F.3d 93, 108 (2d Cir. 2004)("Kerman II"). The matter of whether a right was clearly established is a question of law, while the matter of whether a defendant's conduct was objectively reasonable is a mixed question of law and fact. Id.  In Cowan v. Breen, the Second Circuit explained the process for evaluating claims of qualified immunity in excessive force claims under the analysis laid out by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 201-02, 205 (2001) and preceding cases:

> The threshold question is whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. The inquiry is whether the alleged use of excessive force was objectively reasonable. Thus, claims that an officer made a reasonable mistake of fact that justified the use of force are considered at this stage of the analysis. If the plaintiff fails to establish a constitutional violation, the qualified immunity inquiry ends and the plaintiff may not recover.  If, however, a constitutional violation can be shown, the court must then determine whether the constitutional right was clearly established at the time of the constitutional violation.  This inquiry focuses on whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . .This inquiry adds a 'further dimension' to the qualified immunity analysis by acknowledging that reasonable mistakes can be made as to the legal constraints on particular police conduct . . . . And it ensures that all but the plainly incompetent or those who knowingly violate the law are protected from suit.

352 F.3d 756, 761 (2d Cir. 2003)(citations omitted).  Under this standard, summary judgment may be appropriate even when a material fact issue exists on an excessive force claim if the "law did not put the officer on notice that his conduct would be clearly unlawful." Saucier, 533 U.S. at 202.

In evaluating the reasonableness of an officer's actions, courts engage in a fact-specific inquiry that includes "the severity of the crime at issue, whether the suspect

poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).   The reasonableness inquiry is an objective balancing, given the totality of the circumstances, of "the nature and quality of the intrusion on an individual's Fourth Amendment interest against countervailing governmental interests at stake." Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)) (internal quotations omitted). Factors to consider are the severity of the crime at issue, whether a suspect poses an immediate threat to the safety of the officers or others, and whether a suspect resists arrests. Id.   "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.  Officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the appropriate steps, including the amount of force, that are necessary in a particular situation.  Id. at 397.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id

### III.  DISCUSSION

The manner in which a person is handcuffed can give rise to a claim for excessive force, specifically, as well, in situations where the prisoner makes the officer aware of a preexisting injury.  See e.g., LaLonde v. County of Riverside, 204 F.3d 947(9th Cir. 2000)(holding that tight handcuffing can constitute excessive force); Walton v.  City of Southfield, 995 F.2d 1331, 1342 (6th Cir. 1993)(denying summary judgment

where plaintiff may have informed officers that she had an injured shoulder before handcuffing); Horton v. Brookfield, 3:98-CV-1834, 2001 WL 263299 (D.Conn. March 15, 2001)(Hall, J.)("Handcuffing has been found to give rise to a claim of excessive force where an individual suffers an injury as a result of being handcuffed"). The District Court in Esmont v. City of New York, 371 F.Supp.2d 202 (S.D.N.Y. 2005) synthesized well the factors relevant to the consideration of excessive force claims involving the application of handcuffs:

> It is well established that the right to make an arrest accompanies with it the right to use some degree of physical coercion. Graham, 490 U.S. at 396, 109 S.Ct. 1865. Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out. Cavazos v. Voorhies, 00-C-7929, 2002 WL 31017492, at *3 (N.D.Ill. Sept. 9, 2002). Placing handcuffs on an arrestee tight enough to cause nerve damage may, however, constitute excessive force in violation of the Fourth Amendment. See, e.g., Kopec v. Tate, 361 F.3d 772, 777 (3d Cir.2004); Lucky v. City of New York, 03 Civ.1983, 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004); Simpson v. Saroff, 741 F.Supp. 1073, 1078 (S.D.N.Y.1990). Contra Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir.1999) (claim based on tight handcuffing "is so insubstantial that it cannot as a matter of law" give rise to a Fourth Amendment violation). The reasonableness of the handcuffing of an arrestee must be determined in light of the minimal amount of force necessary to maintain custody . . . . See Santos v. Gates, 287 F.3d 846, 854 (9th Cir.2002). In addition, in evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists. See, e.g., Burchett, 310 F.3d at 944-45; Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir.2001) (plaintiff must show more than de minimis injury).

Id. at 214-15.

In its ruling on Williams' previous motion for summary judgement, the court found that Williams' initial decision to handcuff Rosado behind her back was not

unreasonable in light of the possibility that a knife was present on the scene or in Rosado's possession.[2]  Williams now argues that Rosado's continued detention, with her hands behind her back, was necessary and reasonable until a female officer was available to search her at the police headquarters.  However, given Rosado's complaints of pain and her recent shoulder injury, and the duration of her detention, the court cannot conclude, as a matter of law, that Rosado's continued detention in handcuffs behind her back was objectively reasonable.  While the danger that Rosado could access a hidden knife justified the manner of her initial detention, that danger decreased in degree when Rosado was placed in a holding cell, and other actions, such as handcuffing Rosado in front, could have been taken to mitigate the pain that she was experiencing.  Accordingly, a reasonable jury could find that the manner of Rosado's detention in handcuffs was unreasonably excessive under the circumstances.

The court, then, must determine whether Rosado's detention violated a clearly established right.  "[A] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.' "  Luna v. Pico 356 F.3d 481, 490 (2d Cir. 2004).  The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of

---

[2]The court also found that the alleged injuries to Rosado's wrists from the handcuffing were insufficiently serious to sustain a claim for the violation of her constitutional rights.  Ruling, September 8, 2005, p. 7 n. 4.

the conduct. The unlawfulness must be apparent. McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) (citation omitted). A court need not have ruled that "the very action in question" is unlawful, Lauro v. Charles, 219 F.3d 202, 214 (2d Cir. 1999) (quoting Anderson, 483 U.S. at 640), nor that an act characterized by facts "fundamentally similar" or "materially similar" to the present case violates the constitution, Hope v. Pelzer, 536 U.S. 730, 741 (2002), in order to defeat qualified immunity. Rather, the "clearly established" standard guarantees only that an official cannot be sued unless the state of the law at the time of the alleged violation gave him "fair warning" that his actions were unlawful. Id.

Generally, "[i]t is beyond dispute that the right to be free from excessive force has long been clearly established." Green v. Montgomery, 219 F.3d 52, 59 (2d Cir. 2000). However, the specific right in question in the instant case must be defined with greater specificity. See Saucier, 533 U.S. at 202. "The chronic difficulty with this analysis for courts is in accurately defining the right at issue." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). Williams argues that the relevant question is whether "it was clearly established as of 2001 that it constituted excessive force to keep an arrestee handcuffed with her hands behind her back until the arrestee could be subjected to a full search to rule the possibility that a knife was secreted on her person?" Def's Memo. of Law in Supp. of Mot. for Summ. Judg., p. 11 [Doc. No. 32]. However, in addition to leaving out facts relevant to the excessive force analysis, such as Rosado's preexisting shoulder injury, this construction is overly narrow and more

9

circumscribed than the "fair warning" nature of the inquiry entails. See Hope, 122 U.S. at 741; LaBounty, 137 F.3d at 73. In Calamia v. City of New York, 879 F.3d 1025, 1035 (2d Cir. 1989), the Second Circuit found that evidence of the detention in handcuffs tied behind the back for five to six hours of a person suspected of property theft during a search of the person's apartment was sufficient to sustain a claim for excessive force. Nonetheless, the court has not found, nor has been referred to, any Supreme Court or Second Circuit authority that established, as of 2001, that the manner in which an arrestee suspected of dangerous behavior is detained in handcuffs for a shorter period of time can be unreasonably excessive. Cf. Soares v. State of Connecticut, 8 F.3d 917, 922 (2d Cir. 1993)(finding preexisting case law did not recognize clearly established right to be free from handcuffing). Accordingly, the court cannot conclude that Williams, at the time of the alleged incident, had "fair warning," beyond the general prohibition against the use of unreasonably excessive force, that the hour-long detention of Rosado in handcuffs tied behind her back violated Rosado's clearly established rights.

Moreover, even if Williams' conduct were found to violate a right that was clearly established at the time of Rosado's arrest, undisputed facts in the record demonstrate that it was not objectively unreasonable for Williams to believe that Rosado's continued detention was not excessive. If an "officer's mistake as to what the law requires is reasonable . . . the officer is entitled" to qualified immunity on summary judgment. Saucier, 533 U.S. at 206   If "officers of reasonable competence could disagree" about the propriety of the officer's actions, then "immunity should be recognized." Malley v.

Briggs, 475 U.S. 335, 341 (1986). It is undisputed that Rosado was released from her handcuffs after being searched by a female officer. Even if it were ultimately unreasonable to detain Rosado with her hands behind her back, in light of her complaints of a preexisting injury and the duration of her detention, until such a search could occur, given Williams' legitimate concern for the safety of officers and others, and the report regarding Rosado's possession of a knife, it was not unreasonable for Williams to believe that such a search was a necessary precondition for her release from her cuffs. See Saucier, 533 U.S. at 206 ("Qualified immunity operates . . . to protect officers from the sometimes 'hazy border between excessive and acceptable force.'"). Although Rosado contends that the search to which she was subjected in the police headquarters was no more intrusive than the search to which she was subjected in the street– thus rendering the need to detain her awaiting a search by a female officer uncompelling– it was not unreasonable for Williams to believe that, prior to such a search being performed, that a search by a female officer could be more thorough and comprehensive than the search that had already been completed in the field.

Accordingly, Williams is entitled to qualified immunity from Rosado's remaining claim that the manner of her continued detention at police headquarters was unreasonable.

**IV.    CONCLUSION**

For the foregoing reasons, the defendant's motion for summary judgment [Doc. No. 31] is GRANTED. The clerk of court is directed to close the case.

**SO ORDERED.**

    Dated this 26th day of April, 2006, at Bridgeport, Connecticut.

                              /s/ Janet C. Hall
                              Janet C. Hall
                              United States District Judge